IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00398-WYD-MJW

THURMAN HARRISON, JR.,

Plaintiff,

v.

UNIVERSITY OF COLORADO HEALTH SCIENCE CENTER, et al.,

Defendants.

---

**RECOMMENDATION ON
MOTION TO DISMISS UNDER F.R.C.P. [sic] 12(b)(6) and 12(b)(1)
(Docket No. 30)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by Judge Wiley Y. Daniel on July 18, 2008. (Docket No. 19).

**Plaintiff's Allegations**

The operative pleading is the pro se incarcerated plaintiff's Second Amended Complaint: Prisoner Complaint (Docket No. 12), which is not a model of clarity, in which the plaintiff asserts the following. In the Nature of the Case section, plaintiff states that he was a "client" in a "Peer I" program.[1] On different occasions, staff members of that

---

[1]According to the defendants:

> [t]he Peer I Therapeutic Community is a long-term residential treatment program for adult males with substance abuse problems. . . . The Department of Corrections refers inmates, such as [plaintiff], to Peer I . . . . The Peer I Therapeutic Community is part of the University of Colorado

program gave out information about the plaintiff without a signed Release of Information form. On another occasion, a staff member gave to other "clients" information plaintiff wrote to staff members. Staff members allow inmates to supervise and control other inmates which is against the rules of the Colorado Department of Corrections. The facility violated plaintiff's due process rights when they accused him but never told him what he did wrong. Defendants' actions were detrimental to plaintiff in that he lost his job and their actions caused him to leave the program due to information passed from staff to clients.

Plaintiff raises three claims for relief. In his first claim, entitled "Privacy Act Violation Patient Confidentiality," plaintiff asserts the following. On November 15 and 16, 2007, staff members Paul Thompson, Barbara Sanchez, Ms. Trudy, and John Doe of Peer I gave out information to Tanaker Pet Care Centers, Inc., without plaintiff signing a Release of Information form. The Peer I Notice of Patient's Rights "states that every patients [sic] confidentiality will be upheld within the limits of Federal and State regulations." (Docket No. 12 at 6). On another occasion, the same staff members acknowledged that there was a client under the plaintiff's name at the therapeutic community without plaintiff's written permission. The information they released "cause the plaintiff harm in his employment, not being able to go to work and informing others

---

Health Sciences Center. . . .

> Peer I is a highly structured program that utilizes an array of treatment approaches to help individuals eliminate drug use and related anti-social behavior. Among the requirements of the Peer I program is that residents obtain employment. . . .

(Docket No. 30 at 2-3).

outside of the therapeutic community that the plaintiff was in the program." (Docket No. 12 at 6). "In this case the plaintiff was not aware that the defendants had talked to the unauthorized persons until they start asking questions about things I had no knowledge about. I was discipline for them the Defendant giving and receiving information about the plaintiff without a writen permission or a release of information." (Docket No. 12 at 6).

In his second claim, entitled "Due Right Violation," plaintiff asserts the following:

> On or about November 16, 2007 staff member Mr. Rick and John Doe told the plaintiff that he needed to write a statement on what he has been doing. The plaintiff informed the Defendants, staff member Mr. Rick and John Doe that he did not know what they were talking about. Staff member John Doe threaten the plaintiff that if he doesn't write the statement, that he was given permission by Staff member Paul Thompson and Barbara Sanchez to send me back to prison. The plaintiff asked staff member John Doe and Mr. Rick what do they think I did wrong. Again they refuse to tell me. I was being discipline without being told what the plaintiff did. The plaintiff was withheld from going to work without knowing why. The clients are entitled to know what they are suppose to have done wrong. Peer one deprived the plaintiff of liberty without due process of law by disseminating stigmatizing charges in connection with the release of information to unauthorized persons. The plaintiff did not receive due process before being deprived of his property interest by not allowing the plaintiff to continued his employment without being told what information the staff member found out though [sic] the unauthorized person that the plaintiff did. Staff members and inmates shouldn't have to guess about what a staff member said a client did. A client has a right to defend himself. In this case, the staff members did not inform the plaintiff what he did wrong. At no time was the plaintiff given any type of hearing in which to contest the information that the unauthorized person told the staff member.

(Docket No. 12 at 7).

In his third claim, entitled "Reckless Endangerment," plaintiff asserts:

> On or about November 16 2007 and November 17, 2007, the plaintiff was at Peer I and was told by staff member Mr. Rick and John Doe to write a statement about any wrong doing of the plaintiff. The

> plaintiff wrote what he knew. One of the information was that the plaintiff was aware that clients at Peer I had cell phones which was against the rules. Staff member John Doe & Mr. Rick went around telling inmates & clients what the plaintiff has written and was saying that they believe it was a "smoke screen" to cover up what the plaintiff has did. With the staff member giving information, the plaintiff was in a hostile environment which cause mental distress and loss of consortium. The plaintiff was in fear of his life because he heard other clients being upset over the discipline that was being hand out. The staff member had a deliberate indifference to the plaintiff protential [sic] of serious body injury. The staff member and inmates in charge of other inmates which is in violation of the Colorado Department of Correction rules governing supervision. With the staff member releasing the information to other inmates, it cause undue harm to the plaintiff. On November 17, 2007 staff member John Doe had a confrontation with name calling, humiliation and abuse to the plaintiff with other clients around. The other clients were being discipline and when they was told to do there discipline at another house, the plaintiff again heard the clients talking about the plaintiff which put the plaintiff well being in jeopardy. The facility and Peer I staff members created a substantial risk of death or serious injury to plaintiff by releasing information to other inmates that the plaintiff wrote.

(Docket No. 12 at 8).

Plaintiff seeks the following relief: "damages in the amount of $10,000.00 Actual Damages and $10,000 for punitive damages. I am also seeking $100,000 for mental distress and suffering. I also won't also request that Peer I to stop using inmates to control and be in charge of other inmates." (Docket No. 12 at 10).

**<u>Defendants' Motion to Dismiss</u>**

Now before the court for a report and recommendation is Defendants' Motion to Dismiss Under F.R.C.P. [sic] 12(b)(6) and 12(b)(1) (Docket No. 30). Plaintiff has not filed a response to the motion. The court has very carefully considered the motion, the court's file, and applicable case law and Federal Rules of Civil Procedure. The court now being fully informed makes the following findings, conclusions, and recommendation.

Defendants seek dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims and pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Rule 12(b)(1):

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. See U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Statutes conferring jurisdiction on federal courts are to be strictly construed. See *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. See *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).
>
> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. See *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. See *id.* at 1003. A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56. See *id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996). A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A

complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same

time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Defendants seek dismissal on the following grounds: (1) the University enjoys Eleventh Amendment immunity from § 1983 claims; (2) the first claim for relief fails to state a claim upon which relief can be granted because there is not a private cause of action under the Health Insurance Portability and Accountability Act ("HIPAA"); (3) plaintiff's "due right" claim does not identify a viable property interest; (4) plaintiff's claim for reckless endangerment fails to state a claim upon which relief can be granted because plaintiff does not allege a physical injury as required by the Prison Litigation Reform Act ("PLRA"); (5) the individual defendants are entitled to qualified immunity from plaintiff's claims; (6) to the extent plaintiff intends to plead claims arising under Colorado law, the Colorado Governmental Immunity Act bars those claims; and (7) the court should not exercise its pendent jurisdiction in the absence of a viable federal claim.

**Eleventh Amendment Immunity**

"The Eleventh Amendment to the U.S. Constitution provides that the federal courts may not hear suits against state entities, absent a waiver of the state's immunity." Robinson v. Board of Regents of University of Colorado, 390 F. Supp.2d 1011, 1016 (D. Colo. 2005). Defendants first assert that the University enjoys Eleventh Amendment immunity from claims asserted under 42 U.S.C. § 1983. Defendants note that Article VIII of the Colorado Constitution creates a number of state institutions and states, "Educational, reformatory and penal institutions . . . and such other institutions as the public good may require, shall be established and supported by the state, in such

manner as may be prescribed by law." Colo. Const. Art. VIII, § 1. In addition, defendants note that within this broad grant of authority, the Colorado Constitution created the University of Colorado as a state institution of higher education. Colo. Const. Art. VIII, § 5. Therefore, defendants assert that as constitutionally-created state entities, the University of Colorado and its campuses enjoy Eleventh Amendment immunity from suits brought under § 1983. Rozek v. Topolnicki, 865 F.2d 1154, 1158 (10th Cir. 1989); Robinson, 390 F. Supp.2d at 1016-17. Consequently, defendants contend that to the extent that the plaintiff's claims could be read as asserting official capacity claims against University employees of Peer I, the Eleventh Amendment also bars such claims. Smith v. Plati, 258 F.3d 1167, 1171 n.1 (10th Cir. 2001). This court agrees with these arguments and thus recommends that plaintiff's claims against the University and the named defendants in their official capacity, see Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994) ("[T]he Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."), be dismissed for lack of jurisdiction pursuant to the Eleventh Amendment.

**HIPAA**

Defendants next assert that the plaintiff's first claim for relief fails to state a claim upon which relief can be granted. They correctly note that plaintiff did not identify the source of law prohibiting the alleged disclosure by defendants, instead stating that "[t]here are Federal and State statute[s] and regulations that prohibit[] state workers and counselors from releasing information about a client within a therapeutic setting. . . .This means information about a patient will only be released with the patient['s] written

permission." (Docket No. 12 at 6). As stated above, it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Based upon the plaintiff's averments, however, the defendants assume in their motion to dismiss that plaintiff relies on the privacy regulations implementing HIPAA. Defendants correctly assert that HIPAA's privacy regulations do not provide a private cause of action. University of Colo. Hosp. Auth. v. Denver Pub. Co., 340 F. Supp.2d 1142 (D. Colo. 2004). Therefore, to the extent plaintiff's first claim raises a HIPAA claim, it should be dismissed. It is thus recommended that plaintiff's first claim for relief be dismissed.

**Due Process Claim**

Defendants next assert that plaintiff's "due right" claim (claim two) does not identify a viable property interest. In that claim, plaintiff asserts that the defendants deprived him of due process when he "was withheld from going to work without knowing why." (Docket No. 12 at 7). Defendants correctly contend that the U.S. "Constitution does not create a property or liberty interest in prison employment," nor do the laws of the State of Colorado. Ingram v. Papalia, 804 F.2d 595, 596 (10th Cir. 1986); Grady v. Edmonds, 2007 WL 2986167, *8 (D. Colo. June 11, 2007). Plaintiff's due process claim contained in claim two should thus be dismissed.

**Lack of Physical Injury**

Next, defendants assert that plaintiff's third claim, which is for reckless endangerment, fails to state a claim upon which relief can be granted. In that claim, plaintiff asserts that Peer I staff members "created a substantial risk of death or injury"

because "other clients were upset over the discipline" that Peer I imposed because of violations. (Docket No. 12 at 8). Plaintiff complains of a "hostile environment" that caused "mental distress and loss of consortium" as well as having had a confrontation with a staff member, John Doe, "with name calling, humiliation, and abuse." (Docket No. 12 at 8). Defendants note that plaintiff does not claim that he suffered any physical injury, and thus they assert that plaintiff's third claim is barred by the PLRA, 42 U.S.C. § 1997e(e).

Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Here, plaintiff seeks compensatory and punitive damages. Because plaintiff does not allege any physical injury, he cannot receive compensatory damages for any emotional harm caused by the alleged civil rights violation. 42 U.S.C. § 1997e(e). Plaintiff's claim for punitive damages, however, cannot be dismissed on this basis. See Baughman v. Saffle, 24 Fed. Appx. 845, at *2 n.2 (10th Cir. Oct. 17, 2001) (plaintiff can recover nominal and punitive damages if the trier of fact concludes that his constitutional rights were violated) (citing Searles v. Van Bebber, 251 F.3d 869, 875-76, 878-80 (10th Cir. 2001)); Brack v. Ortiz, 2007 WL 867992, at *17 n.11 (D. Colo. Mar. 20, 2007) ("While a claim for compensatory damages would clearly be barred in the absence of any showing of physical injury, it is not clear that a claim for either punitive or nominal damages would also be barred."); Slusher v. Samu, 2006 WL 3371636 (D. Colo. Nov. 21, 2006) (plaintiff's claims for compensatory damages limited to the claim where physical injury is alleged to have been caused by the alleged constitutional violation). In

sum, plaintiff's claim for compensatory damages on claim three fails as a matter of law pursuant to the PLRA, and it is recommended that such claim be dismissed.

The court, however, recommends a sua sponte dismissal of this claim in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).[2] Reading plaintiff's third claim liberally, he may be attempting to raise an Eighth Amendment claim. "A prisoner states an Eighth Amendment violation by alleging that a prison official intended to cause him serious harm by inciting other inmates to do violence against him. . . . While an 'idle threat' of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim, an imminent threat of serious harm, even though injury never actually occurs, will suffice." Purkey v. Green, 28 Fed. Appx. 736, 745 (10th Cir. Aug. 17, 2001) (citations omitted). Even accepting plaintiff's allegations in his Amended Complaint as true, this court cannot find that he has stated an Eighth Amendment claim in his third claim for relief. Plaintiff allegedly encountered only verbal abuse and merely had a fear of possible physical harm because other participants in the program were upset at discipline being imposed. See id.; Jenner v. McDaniel, 123 Fed. Appx. 900 (10th Cir. Feb. 17, 2005) (Inmate in a therapeutic community program which purportedly required inmates to inform on other inmates for behavior outside the program guidelines who alleged he was labeled a "rat" and a "snitch" and thus was the target of physical confrontation failed to state an Eighth Amendment claim.).

Based upon the recommendations above, this court will not address defendant's

---

[2]Section 1915(e)(2)(B)(ii) provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."

qualified immunity argument.

**State Law Claims**

Defendants raise several bases for dismissal of any state law claims that may be raised in the Second Amended Complaint.[3]  Assuming plaintiff has raised such claims, this court agrees with defendants that the court should not exercise its supplemental jurisdiction in the absence of a viable federal claim.  "Where a district court has dismissed all claims over which it has original jurisdiction, 28 U.S.C. § 1367(c)(3) expressly authorizes the court to decline to exercise supplemental jurisdiction over the remaining state-law claims."  Sauer v. McGraw-Hill Cos., 2001 WL 1250099, *18 (D. Colo. June 12, 2001).  "Whether to exercise supplemental jurisdiction under such circumstances lies within the discretion of the court."  Id. (citation omitted).  The court should exercise such discretion only "in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction."  Id.  Generally, "the balance of factors to be considered will point towards declining to exercise jurisdiction over state-law claims when the federal claims have been eliminated prior to trial."  Id.  (citation omitted).  Furthermore, "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."  Id. (quotations omitted).  In this case, there are no compelling reasons to exercise supplemental jurisdiction.  In fact, discovery has not even been conducted yet in this case, nor has a Scheduling Order even been entered.  Therefore, it is recommended that any state law claims contained in the

---

[3]Defendants have withdrawn their argument that dismissal is warranted because plaintiff did not file a notice of claim.  (See Docket Nos. 30 at 15, 32, 34).

Second Amended Complaint be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendants' Motion to Dismiss Under F.R.C.P. 12(b)(6) and 12(b)(1) (Docket No. 30) be granted.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  November 25, 2008         s/ Michael J. Watanabe
       Denver, Colorado          Michael J. Watanabe
                                 United States Magistrate Judge